```
          UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF MISSISSIPPI
                 WESTERN DIVISION
```

**UNITED STATES OF AMERICA**                                    **PLAINTIFF(S)**

**V.**                               **CIVIL ACTION NO. 5:11cv117-DCB-RHW**

**MARKUS BRENT STANLEY**                                         **DEFENDANT(S)**

## OPINION AND ORDER

Plaintiff, the United States, filed suit pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a) in order to obtain a judgment reducing Defendant Markus Stanley's federal income tax liabilities for years 1998-2010 to judgment. A few minutes after the deadline for filing dispositive motions, the United States moved for summary judgment. Stanley moved to strike this motion as untimely. The Court denied Stanley's motion but allowed him additional time to supplement his response. Now, with supplemental briefing complete, Plaintiff's Motion for Summary Judgment [**docket no. 32**] is ripe for review. Having carefully considered it and its multiple accompanying documents, the Defendant's opposition thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court grants the motion in part and denies the motion in part.

## SUMMARY OF THE ISSUES

There is no dispute that Stanley has not paid a significant portion of his income taxes for years 1998-2010. Nor is there any dispute, material or otherwise, that Stanley owes taxes for years 2008-2010, which accrued after he filed bankruptcy, or that Stanley

owes taxes for 2005-2008, the three years before he filed bankruptcy. See 11 U.S.C. § 507(a)(8)(i); 11 U.S.C. § 523(a)(1)(A). The dispute is whether Stanley's tax liabilities for years 1998-2005 were discharged in bankruptcy under 11 U.S.C. § 523(a)(1)(C). See generally, In Re Markus Brent Stanley, No. 09-01727 (Bankr. S.D. Miss.). The United States contends that Stanley willfully attempted to defeat or evade his tax liabilities for these years, exempting them from discharge. In support of this contention, it provides a thirty-one page Statement of Facts ("SoF") [docket no. 34], supported by hundreds of pages of documentary evidence [docket no. 31]. Stanley mostly opposes this evidence with conclusory allegations; however, he does provide some strained evidence to support his opposition. The narrow issue for the Court is whether the evidence, taken as whole, exhibits a genuine dispute as to whether Stanley attempted to evade or defeat his taxes for years 1998-2005.

## STANDARD OF REVIEW

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real

Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

**RELEVANT LAW**

Congress has provided that a debtor's liabilities are not discharged for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C § 523(a)(1)(C). Interpreting this provision, the Fifth Circuit has recently explained that this exception "contains a conduct requirement . . . and a mental state requirement." United States v. Coney, 689 F.3d 365, 371 (5th Cir. 2012) (citation omitted). In order to satisfy the conduct requirement, the United States must show that "the debtor attempted in any manner to evade or defeat a tax." Id. (internal quotations marks and alteration omitted). This conduct can include attempts to evade tax assessment, such as failing to file tax returns or filing inaccurate tax returns, or collection, such as avoiding the payment of assessed taxes. Id. at 372-73 (citations omitted).

As for the mental state requirement, the United States must show that the debtor attempted to defeat these taxes "willfully." Id. at 374. The Fifth Circuit employs a three-part test for determining willfulness. Under this test, the United States must show that "the debtor (1) had a duty to pay taxes under the law, (2) knew he had that duty, and (3) voluntarily and intentionally violated that duty." Id. at 374 (citing In re Bruner, 55 F.3d 195, 197 (5th Cir. 1995)). Again recently, the Fifth Circuit reiterated that an attempt is willful if it is done "voluntarily, consciously

or knowingly, and intentionally." Coney, 689 F.3d at 374 (internal quotations and citations omitted). It expressly rejected the argument that specific intent to thwart IRS collection efforts, i.e., defraud the government, is required for a finding of willfulness. Id. A court evaluates the debtor's conduct and state of mind based upon the totality of the circumstances. Id.

Having considered how to apply this law, the Court adds that it is hard to envision a debtor violating the conduct requirement without also violating the mental state requirement because an attempt requires some form of intent to commit an act. See American Heritage Dictionary 139 (2nd college ed. 1991) ("attempt" means "*to try* to do, make, or achieve" (emphasis added)). While a nonwillful attempt may not be a complete contradiction, it would require an odd circumstance for a court to conclude that a debtor involuntarily tried to evade or defeat his taxes. Because this is so, the evidence used to analyze a debtor's conduct tends to be the same evidence used to evaluate his mental state. See, e.g., Coney, 689 F.3d at 371, In re Fretz, 244 F.3d 1323 (11 Cir. 2001). In re Fegeley, 118 F.3d 979 (3rd Cir. 1997).

## ANALYSIS

As stated in the summary of the issues, the inquiry before the Court pertains to the intent behind Stanley's failure to pay taxes for 1998-2005, that is, whether Stanley attempted to evade or defeat these taxes. Looking simply at the big picture, the evidence

provided by the United States suggests that he did. First, Stanley was aware that he had a duty to pay taxes (he filed his tax returns, albiet consistently late). See generally SoF ¶¶ 10-23. Second, some years Stanley simply ignored or attempted to dodge the assessment of his taxes (he filed his 1998 tax return in 2004, only after an IRS audit, and failed to report taxable income on his 2001 and 2003 tax returns).[1] Id. ¶¶ 11, 14, 16. Third, Stanley has not paid his taxes in full for any year in the last decade and knew that he was not paying his taxes in full (other than withholdings from his income, he rarely made payments to satisfy his outstanding liabilities and when he did make payments they were *de minimus*). Id. Fourth, Stanley was aware that this conduct was unacceptable (as early as 2003 IRS Agent McCullough attempted to collect his taxes). Id. ¶ 31. Finally and critically, Stanley possessed the financial resources to pay his taxes, at least in part (he earned a steady and substantial income practicing medicine throughout the time he chose not to pay his taxes).[2] Id. ¶¶ 24-30. At minimum, the

---

[1] The Court points out these particular years in order to show that Stanley's conduct is not on par with the debtor in Haas, who was credited for filing accurate tax returns. In re Haas, 48 F.3d 1153 (11th Cir. 1995), abrogated in part, In re Griffith, 206 F.3d 1389, 1395-96 (11th Cir. 2000) (en banc).

[2] For the record, the Court's citation to the Government's SoF also incorporates the evidence on which these facts are based. In his supplemental memorandum [docket no. 54] Stanley attempts to dispute some of the assertions in the SoF. Stanley, however, did not provide any evidence to create a material dispute as to the "big picture."

totality of the circumstances indicates that since 1998 Stanley shirked his legal duty (of which he was conscious) and hoped that his tax liabilities would somehow magically disappear (perhaps through bankruptcy). This evidence alone indicates that Stanley violated the conduct requirement of 11 U.S.C § 523(a)(1)(C). See In re Fegeley, 118 F.3d at 984.

Moreover, a closer look at Stanley's financial decisions during the decade in question suggests a greater degree of culpability. There is some evidence, admittedly circumstantial, to indicate that Stanley undertook calculated maneuvers to prevent the IRS from collecting his unpaid tax liabilities. To cite a primary example, Stanley's principal residence is titled solely his wife's name, even though Stanley was personally involved in securing two mortgages on this property and regularly pays the mortgage and related expenses for this property.[3] SoF ¶¶ 70-77. This arrangement has prevented the IRS from placing a lien on his residence in order to collect the outstanding tax liabilities that Stanley appears uninterested in paying. Stanley attempts to justify this arrangement by explaining that he was required to co-sign for the loan in order to secure its financing because his wife had no income. This explanation only heightens the Government's suspicion that Stanley did not take any ownership in his principal residence

---

[3] In his Chapter 7 Bankruptcy schedules, Stanley disclosed no ownership of any real property but claimed monthly rent or a home mortgage expense of $2,122.60 for his family.

simply to place it outside of the IRS's reach. Such conduct exhibits an attempt to evade or defeat his taxes. See In re Mitchell, 633 F.3d 1319, 1329 (11th Cir. 2011).

As another example, in 2005, after substantial efforts and negotiations with Stanley's accountant, IRS Agent McCollough worked out an installment agreement for Stanley to satisfy his 1998-2003 tax liabilities, which at that point totaled $437,492.20. The agreement required Stanley to withhold $5,000.00 per month from the income generated from his recently accepted job, which paid his earnings into his newly created and solely-owned corporation, Vicksburg Primary Care Team ("VPCT").[4] Shortly after Stanley agreed in principal to allow his payments to be withheld from his VPCT income and after he issued a voided check to initiate a monthly direct debit of $5,000 to the IRS, McCollough closed the IRS's case against Stanley. Yet, Stanley made just one $5,000.00 payment toward his 1998-2003 tax liabilities. Moreover, McCollough, who was reassigned the case in 2008, discovered that VPCT never filed the necessary forms with the IRS indicating that it had withheld federal income taxes from Stanley and in fact never withheld his income taxes. To the contrary, she found that Stanley routinely disbursed large amounts into his personal checking account or to

---

[4] VPCT, Mission Primary Care Clinic, and Stanley's tax liabilities have been the subject of previous litigation in this Court. See Mission Primary Care Clinic, PLLC v. Director, IRS, 606 F. Supp. 2d 638 (S.D. Miss. 2009).

his wife, consistency leaving minimal balances in the VPCT account. See McCullough Decl. ¶¶ 27-37, docket no. 31-26 at 10-13.[5] Here again, Stanley's explanation that he thought he was paying $5,000 each month to the IRS is difficult to accept.

Turning quickly to the three-part test for evaluating Stanley's intent, Stanley concedes that he had a duty to pay these taxes and was aware of this duty "in the general sense." This concession is enough to satisfy the first two parts of this test. And even if Stanley had not conceded this point, as stated above, the fact that Stanley filed his tax returns for the years in question is evidence of his knowledge of his duty to pay taxes. As for whether his evasion or defeat of his tax liabilities was willful under the third part of this test, again, his conduct indicates that it was. The evidence suggests that Stanley knew of his liabilities, could have paid some of his liabilities, but chose not to. In fact, circumstantial evidence suggests that he took affirmative action to frustrate IRS collection efforts. In short, Stanley does not appear to be the honest but unfortunate debtor the bankruptcy code was designed to protect. In re Bruner, 55 F.3d at 200 (citing Grogan v. Garner, 498 U.S. 279, 285 (1991)).

Nevertheless, after all this, the Court will not grant summary judgment in favor of the United States on this issue. Stanley

---

[5] McCollough's efforts to collect these taxes were halted when Stanley filed for bankruptcy in 2009.

offers a few shreds of evidence, some of which are arguably admissible, to show that (1) he has attempted to comply with the IRS in order to satisfy his liabilities and (2) his failure to pay his taxes were part of his inability to manage his financial affairs caused by his unstable personal life. As for the evidence he offers to support his first contention, IRS Agent Gunnel's 2004 statement in a Fraud Awareness Lead Sheet that Stanley "had worked with collection after getting behind in filing returns," if admissible, creates only the slightest of doubt about his conduct and mental state, particularly viewed in light of his default of the 2005 installment arrangement. As for his personal and other financial troubles, again, to the extent that the evidence Stanley adduces in support is admissible,[6] the United States convincingly argues that the inferences Stanley draws from it are mostly rebutted by his other financial activities during this period and the fact that Stanley practiced medicine during this time. But, given that the present case is built upon indirect or circumstantial evidence—as such cases typically are—and involves Stanley's mental state, the Court concludes that the better course

---

[6] The Government's challenge to Stanley's proffered expert testimony appears well-founded, although the Court will reserve judgment on this issue until the trial. The Court notes that even if the expert testimony is reliable and not hearsay it is not clear what value the testimony has to the present case. The Court cannot infer that Stanley could not have attempted to evade his taxes from the generic assertion that Stanley's bipolar disorder affected all aspects of his behavior.

is to make findings of fact at the upcoming bench trial. <u>See, e.g.</u>, <u>Irwin v. United States</u>, 558 F.2d 249, 257 (5th Cir. 1977) ("It has been established in this court that summary judgment is improper if factual issues necessary for decision involve the state of mind of a party." (citing <u>Croley v. Matson Navigation Co.</u>, 434 F.2d 73, 77 (5th Cir. 1971)). Had Stanley not filed his tax returns for most of the years in dispute and not made an effort to cooperate with the IRS (even if it appears feigned), then the Court might find it unnecessary to proceed to trial. The Court harbors the slightest of reservations as to Stanley's intent and therefore finds that the United States did not carry its summary-judgment burden of showing absence of a genuine issue as to whether Stanley attempted to evade his taxes for years 1998-2005. <u>See Catrett</u>, 477 U.S. at 323.

Although not dispositive, having compared Stanley's conduct with the conduct of the debtors in the two most relevant Fifth Circuit cases, <u>Bruner</u> and <u>Coney</u>, the weight of the evidence produced in this case falls closer in the spectrum to the evidence produced in <u>Bruner</u> and than in <u>Coney</u>. And in <u>Bruner</u> the bankruptcy court conducted a hearing to determine whether the evidence showed that the Bruners knew about but resisted paying their tax liabilities. <u>See</u> <u>In re Bruner</u>, 55 F.3d at 200. In fact, the circumstances here are very similar to those in <u>Bruner</u>, where Dr. Bruner, the husband-debtor, could have but chose not to pay his taxes *and* hid his income and assets in a shell entity. <u>Id.</u> at 197-

98. In Coney, the district court granted summary judgment for the United States. There, the debtor had pleaded guilty to criminal conduct related to his taxes, thereby providing the United States with direct evidence of his attempt to avoid IRS collection efforts. Coney, 689 F.3d at 376. Indeed, judging simply from the relevant cases cited by the United States, granting judgment based on the absence of genuine dispute as to the debtor's intent, although certainly warranted in some instances, seems to be the exception rather than the rule. See In re Mitchell, 633 F.3d 1319 (11th Cir. 2011) (bankruptcy court made findings of fact); In re Jacobs, 490 F.3d 913 (11th Cir. 2007) (same); In re Fretz, 244 F.3d 1323 (11 Cir. 2001) (same); In re Lacheen, 365 B.R. 475 (Bkrtcy. E.D. Pa. 2007) (denying summary judgment, holding bench trial); Landi v. United States, 316 B.R. 363 (M.D. Fla. 2004) (bankruptcy court made findings of fact); In re Spiwak, 285 B.R. 744 (S.D. Fla. 2002) (same). But see, In re Obinwa, 2012 WL 5555715 (Bkrtcy. M.D. Fla. Nov. 13, 2012) (granting summary judgment); In re Harris, 328 B.R. 837 (Bkrtcy. S.D. Ala. 2005) (granting summary judgment in part and denying it in part).

### ORDER

Accordingly, **IT IS HEREBY ORDERED THAT** the Motion for Summary Judgment [**docket no. 32**] by the United States is **DENIED IN PART AND GRANTED IN PART**. Because United States presented prima facie evidence that Stanley's taxes for years 2008-2010, which accrued

after he filed bankruptcy, are owed to the United States, and that Stanley's tax liabilities for the years 2005-2008 are excepted from discharge under 11 U.S.C. §§ 507(a)(8)(i) and 523(a)(1)(A), these tax liabilities will be reduced to final judgment. Issues of fact regarding Stanley's tax liabilities for the years 1998-2005, however, remain. Therefore, the Court will hold a bench trial on the issue of whether Stanley's remaining tax liabilities were discharged in bankruptcy. No final judgment shall issue until such time as the Court determines the full amount of Stanley's unpaid tax liabilities, interest, and penalties.

So **ORDERED**, this the 24th day of April, 2013.

  /s/ David Bramlette  
**UNITED STATES DISTRICT JUDGE**