UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF(S)

V.                                    CIVIL ACTION NO. 5:11cv117-DCB-RHW

MARKUS BRENT STANLEY                                        DEFENDANT(S)

<u>OPINION AND ORDER</u>

This cause is before the Court on Defendant Markus Brent Stanley's Motion for Reconsideration of the April 25, 2013 Order [**docket no. 64**], Motion for Relief from the April 25, 2013 Order [**docket no. 67**], Motion for Reconsideration of the June 19, 2013 Order [**docket no. 79**], Motion to Stay [**docket no. 81**] the present proceedings in light of his bankruptcy case, and Motion for Reconsideration [**docket no. 84**].[1] Having carefully considered these Motions, the Government's responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court will deny each of the Motions.

**ANALYSIS**

**I.   Motions for Reconsideration of the April 25, 2013 Order**

Stanley's primary challenge to the April 25, 2013 Order, raised in his first Motion and repeated with more vigor in his second, is that his bankruptcy discharge order prevents the United

---

[1] Stanley's three final motions will not be ripe by the time this case is scheduled to go to trial. Although the Court will rule on the issues raised in these motions in order to clarify the issues for trial, the United States may respond as provided by the local rules if it deems a response necessary.

States from now seeking to reduce his tax liabilities for the years 1998-2004 to judgment.[2] Now that he has called this matter to the Court's attention by motion, the Court acknowledges that Stanley did state in his answer that the United States failed to initiate timely adversarial proceedings in his bankruptcy case and therefore should be estopped from attempting to reduce his tax liabilities to judgment. See Answer (Second Affirmative Defense), docket no. 11. But he never raised this argument in either of responses to the Government's Motion for Summary Judgment. Nor did he move for summary judgment on this basis.

Instead, in his initial response to the Government's Motion for Summary Judgment, Stanley argued that (1) he did not willfully attempt to evade or defeat his taxes and (2) the Government's Motion was late. In part because he was right on the second point, the Court allowed him to file a second response to the Government's Motion. In his second response, Stanley argued that he did not willfully attempt to evade or defeat his taxes, and the Court concluded that there was a genuine issue as to whether the failure to pay his taxes was willful. Stanley never questioned the Court's authority to make this ruling or suggest that this determination should be anything other than de novo.

---

[2] Stanley appears to be asking for the Court to rule that the United States cannot reduce his tax liabilities to judgment as a matter of law because those liabilities were discharged in bankruptcy.

Now, shortly before trial, Stanley claims that this Court did not have the authority to make its summary-judgment determination because the United States's case is essentially an untimely appeal of the bankruptcy court's order of discharge. He asserts that this Court should review the bankruptcy court's "findings of fact" for clear error and argues—without attaching any supporting evidence—that "[a]t all times relevant hereto, the Bankruptcy Court was fully cognitive of the two prong test set out in [Coney] and granted a discharge of Stanley's tax liability after a careful review of Stanley's conduct and a thorough evaluation of his state of mind and credibility as a witness." Pl.'s Br. at 64-1. The United States is correct that an affirmative defense should be raised by motion. See Local Rule 7(b)(2)(A). Moreover, because this argument could have been raised in either of his responses to the Government's Motion for Summary Judgment, but was not, Stanley waived this argument. Therefore there is no basis on which this Court should grant either Rule 59(e) or Rule 60(b) relief. See Brown v. Illinois Central R. Co., Inc., 480 F. App'x 753, 754 (5th Cir. 2010).

In the alternative, the Court denies Stanley's Motions on their merits. As to the bankruptcy issue, it is not the absence of evidence alone that discredits Stanley's argument. The discharge order itself, which was produced by the Government in support of its Motion for Summary Judgment, indicates that Stanley's tax debts

*were not discharged* in bankruptcy. See Discharge Order (Official Form 18), docket no. 31-34 at 2. That order provides, "[s]ome of the common types of debts which are *not* discharged in a chapter 7 bankruptcy are: (a) debts for most taxes." Id. (emphasis in the order). And now, as further confirmation, the United States has produced other documentation from the bankruptcy court proceedings indicating that the bankruptcy court was fully cognitive of the § 523(a) discharge issue and *did not* grant Stanley a discharge of tax liability.[3] April 13, 2010 Agreed Order, docket no. 78-1.

At the time the Court denied the United States's Motion for Summary Judgment, it was in a position similar to the trial court in Coney, which determined that "[t]he bankruptcy court was not presented with and did not rule on the dischargeability of the Defendants' tax liability." United States v. Coney, 2011 WL 1103631, at *1 (E.D. La. March 22, 2011).[4] Thus, the trial court

---

[3] In response to the Government's Motion stating that the bankruptcy court had improvidently entered an order establishing a deadline for raising § 523(a) discharge, the bankruptcy court entered an agreed order expressly providing that the Government could raise the issue at a latter date. April 13, 2010 Agreed Order, docket no. 78-1. There is no indication that the bankruptcy court's discharge order, which was entered after the April 13, 2010 Agreed Order, altered or superceded the Agreed Order. Moreover, the Agreed Order is consistent with the Fifth Circuit's understanding of the operation of § 523(a)(1)(C): "a tax liability excepted from discharge under § 523(a)(1)(C) . . . is non-dischargeable as a matter of law, and no additional action is required by the creditor." In re Range, 48 F. App'x 103, at *5 (5th Cir. Aug. 20, 2002) (unpublished table decision).

[4] The Fifth Circuit also clearly understood Coney's procedural posture, noting that "[a]fter the bankruptcy court entered the

considered it appropriate to resolve the issue *de novo*. <u>Id.</u> In his Motions for Reconsideration, Stanley has provided no evidence to support the contention that "the Bankruptcy Court . . . granted a discharge of Stanley's tax liability after a careful review of Stanley's conduct and a thorough evaluation of his state of mind and credibility as a witness." Pl.'s Br. at 64-1. Nor is there any legal precedent that counsels against this Court determining whether his tax liabilities should be reduced to judgment. Therefore, the Court will not alter its summary-judgment ruling in light of Stanley's new dischargeability argument.

In addition to the dischargeability argument, Stanley has asserted a variety of other last-minute theories. As to collateral estoppel, equitable estoppel, or res judicata, those arguments fail simply because he has not included evidence to support them. Put simply, there is no evidence that any issue in the present case was adjudicated by the bankruptcy court. Likewise, Stanley has also alleged that the United States has engaged in "tax profiling," but this claim is without merit, again, because he has not supported this argument with legal precedent or with evidence.[5] Also, Stanley

---

discharge order, the Government filed the instant suit to reduce the Coneys' unpaid tax assessments to judgment." <u>United States v. Coney</u>, 689 F.3d 365, 370 (5th Cir. 2012).

[5] Stanley instead opts for statements like "[t]he IRS as an agency has created a systemic culture fraught with abuse of power, discriminatory practices and the use of intimidation in their rabid pursuit of the collection of taxes from the American public." Def.'s Br. at 2 (no citation provided), docket no. 69.

makes a legally unsupported statue-of-limitations argument. The United States instituted the present case within the applicable ten-year limitations period. <u>See</u> 26 U.S.C. § 6502(a)(1).

## II. Motion to Stay Proceedings in Light of Stanley's Bankruptcy Case

Relatedly, Stanley asks the Court to stay the present proceedings because the issue of whether his state taxes were discharged in bankruptcy is currently before the bankruptcy court. In support of this argument, Stanley relies mainly on the Government's argument in one of its briefs which suggested that Stanley acknowledged his taxes were not discharged when he asked the bankruptcy court on November 14, 2011 to determine whether his state taxes were discharged by the bankruptcy court order. Regardless of whether this is still a live issue before the bankruptcy court—a matter that is unclear from the record—Stanley has not provided the Court with any relevant law to support a stay in this matter, other than to repeat his argument that the present case is an untimely appeal of the bankruptcy court discharge order. The Court finds that the principles underlying that argument and those underlying his reasoning for a stay are similar. As stated above, in the absence of any contrary evidence, the issue before the Court is procedurally proper and that issue will be resolved at the upcoming bench trial on July 23, 2013.

## III. Motion for Reconsideration of the June 19, 2013 Order

Next, Stanley asserts that the Court should reconsider its

finding that (1) he does not have a right to trial by jury on the issue of dischargeability and (2) he waived his right to a jury trial. Notably, Stanley does not attack the Court's findings that formed the foundation of the Order. Instead, he asserts that this Court has become unduly biased against him and that it would be "constitutionally egregious" to proceed with the bench trial. This assertion—that the Court is biased against him—is based on a misunderstanding of the Court's April 25, 2013 Order, and more fundamentally, what the Court was doing at the summary-judgment stage. After weighing *all* the evidence presented by *both* parties, the Court acknowledged that the issue at the summary-judgment stage was a close one but concluded that Stanley should have the opportunity to present his case at trial inasmuch as there is a disputed issue as to the intent behind his failure to pay his taxes. Thus the Defendant will have a full and fair opportunity to present his case at the upcoming bench trial. As it did at the summary-judgment stage, the Court will consider all evidence presented, including any new admissible evidence, in making its findings of fact and conclusions of law.

As for disregarding the "mens rea" requirement, which was raised in his briefing on other Motions for Reconsideration, Stanley has misconstrued the Court's statement of the law. The Court stated that the relevant statute's conduct requirement—whether he *tried to* evade his taxes—is heavily

dependant on his intent, suggesting that whether he violated the
conduct requirement was inextricably linked to whether he violated
the mental-state requirement. As demonstrated above, far from being
disregarded, Stanley's state of mind was and is critical—central,
even—to the Court's inquiry. In fact, it was *the* basis for the
Court's denial of summary judgment. See April 23, 2013 Order,
docket no. 61 at 11 ("The Court harbors the slightest of
reservations as to Stanley's *intent* and therefore finds that the
United States did not carry its summary-judgment burden . . . .")
(emphasis added). But, just as it was at the summary-judgement
stage, whether Stanley willfully attempted to evade or defeat his
taxes will be—in fact, it must be—evaluated based on all admissible
evidence regarding Stanley's conduct during the years in question.

**IV. Motion for Reconsideration because the Court is allegedly
applying the wrong "standard of care" in this case**

Finally, the argument contained in Stanley's latest submission
is difficult to understand. To attempt to summarize it, first,
Stanley appears to argue that he knew that he should pay his taxes
but could not pay them because his bipolar disorder "controlled"
his impulse not to pay his taxes. Next, he seems to assert that
this consequence of his bipolar disorder—that he could not control
his actions—should be given special weight in the context of this
§ 523(a) action because bipolar disorder is a "covered condition"
under the ADA. In response, the Court briefly points out only that
(1) Stanley's factual claim—that he could distinguish between right

8

and wrong but could not control his actions—is based on an extremely liberal reading of Dr. Steinberg's expert report[6] and (2) his legal argument is based on a misrepresentation of the law.[7] Stanley's final Motion for Reconsideration will be denied.

## CONCLUSION

**IT IS THEREFORE HEREBY ORDERED** that Defendant's Motion for Reconsideration [**docket no. 64**], Motion for Relief [**docket no. 67**],

---

[6] Dr. Steinberg stated: "Dr. Stanley was manifesting symptoms of Bipolar II Disorder at the time of his alleged offenses. These symptoms were severely interfering with his personal and professional life at the time." See Expert Report, docket no. 56-9 at 14.

[7] That Stanley represented to the Court that language taken from a petition for writ of certiorari to the United States (which was denied) was the holding of the United States Supreme Court is a misrepresentation. Compare Def.'s Br. at 3, with In re Greenberg, 1998 WL 34095269, at *6 (Nov. 23, 1998). He also wrongly states, without any explanation as to where he derived this notion, that "in 1984 Congress amended the American's with Disability Act [sic] (ADA) to include bipolar disorder as a covered condition." Def.'s Br. at 2 (citing 42 U.S.C. § 12010, et seq.). Stanley may or may not qualify as disabled under the ADA, but qualifying in this context is not a matter of having a listed, covered condition, as it is with obtaining social security benefits. And finally he claims that "the Florida Supreme Court has ruled that where an Attorney misappropriates his client's money and his bipolar manic depressive disease caused or contributed to his misappropriation of the funds it must follow the mandate of the ADA when deciding discipline." Def.'s Br. at 3 (citing generally to The Florida Bar v. Clement, 662 So. 2d 690 (Fla. 1995)). Inasmuch as Stanley's imperative to "follow the mandate of the ADA" can be construed that the ADA should have some bearing on the outcome of a non-discrimination lawsuit, the Florida Supreme Court expressed the opposite view: "Although Clement suffers from a disability as defined by the ADA, the ADA does not prevent this Court from sanctioning Clement . . . . [E]ven if any of Clement's actions occurred when he could not distinguish right from wrong, the ADA would not necessarily bar this Court from imposing sanctions." The Florida Bar v. Clement, 662 So. 2d 690, 699-70 (Fla. 1995).

Motion for Reconsideration [**docket no. 79**], Motion to Stay Proceedings [**docket no. 81**], and Motion for Reconsideration [**docket no. 84**] are **DENIED.** Further, with respect to Stanley's request that the Court certify either the April 25, 2013 Order or the June 19, 2013 Order for interlocutory appeal, that request is denied. Stanley has not shown that "there is substantial ground for difference of opinion" on either of the issues contained in those orders for which he claims certification is warranted. 28 U.S.C. § 1292(b).

So **ORDERED,** this the 10th day of July, 2013.

<u>    /s/ David Bramlette    </u>
**UNITED STATES DISTRICT JUDGE**